# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

SUMMIT GROWTH MANAGEMENT, LLC,
a Nevada limited liability company; SUMMIT
GREEN MANUFACTURING, INC., a
Nevada corporation,

        Plaintiffs,

    v.

THADDEUS "TED" MAREK, an individual,

        Defendant.

3:12-cv-170-RCJ-WGC

**ORDER**

Currently before the Court is Defendant's Motion to Dismiss Second Amended Complaint (#37).

## BACKGROUND

In April 2012, Plaintiffs Summit Growth Management, LLC ("Summit Growth") and Summit Green Manufacturing, Inc. ("Summit Green") filed a first amended complaint against Defendant Thaddeus "Ted" Marek based on diversity jurisdiction. (Compl. (#3) at 1-2). The complaint alleged four causes of action for (1) fraud/fraudulent misrepresentation; (2) fraudulent concealment; (3) negligent misrepresentation; and (4) Nevada RICO. (*Id.* at 1). In September 2012, this Court granted in part and denied in part Defendant's motion to dismiss. (Order (#27) at 1). The Court denied the motion to dismiss for lack of personal jurisdiction but granted the motion to dismiss for failure to state a claim with leave to amend. (*Id.* at 12). The Court found that Plaintiffs had failed to plead claims 1 and 3 with Federal Rule of Civil Procedure 9(b) specificity and had failed to sufficiently plead a special relationship between Summit Growth and Marek for claim 2. (*Id.* at 8-10).

In September 2012, Plaintiffs filed a second amended complaint ("SAC") and alleged the following. (SAC (#32) at 1). Summit Growth was a Nevada limited liability company whose principal was Steven G. Mihaylo. (*Id.* at 2). Summit Green was a Nevada corporation who on May 20, 2011, became the assignee of Summit Growth in a Debtor-in-Possession, Interim Financing and Post-Confirmation Funding Agreement ("DIP Finance Agreement") between Summit Growth and non-party Skye International, Inc. ("Skye"). (*Id.* at 2-3). Marek served as an officer and director of Skye. (*Id.* at 3). In October 2007, Marek became a director of Skye. (*Id.*). On March 26, 2008, Marek became Skye's secretary. (*Id.*). On May 9, 2008, Marek became Skye's Secretary/Treasurer. (*Id.*). On December 11, 2008, Marek became Skye's Secretary/Treasurer and Chief Financial Officer. (*Id.*). On February 7, 2011, Marek became Skye's President. (*Id.*).

The SAC alleged the following. Skye designed, developed, manufactured, and marketed several models of electronic tankless water heaters and was the debtor in two bankruptcy cases filed in the U.S. Bankruptcy Court for the District of Nevada. (*Id.*). Skye was the debtor in a Chapter 11 case, filed on December 16, 2009. (*Id.*). At the time of that filing, Skye had assets of approximately $1,049,042 and liabilities of approximately $3,171,892 making Skye an insolvent corporation. (*Id.*). Skye was also the debtor in a Chapter 7 case, filed on April 28, 2011. (*Id.* at 4).

The SAC alleged the following. (*Id.*). Marek had made false and fraudulent statements to Mihaylo for the purpose of inducing Summit Growth to enter into and fund the DIP Finance Agreement. (*Id.*). "Marek told Mihaylo that a sale of Skye to two other tankless water heater companies Marek identified as A.O. Smith and Eemax was imminent in that it would occur within four to five months of agreeing to the DIP Finance Agreement." (*Id.*). Specifically, at a November 15, 2009, meeting in Scottsdale, Arizona, Marek told Mihaylo that "Skye was worth $50,000,000 and that A.O. Smith or Eemax would pay that price to purchase Skye." (*Id.* at 5). "Marek also told Mihaylo during that meeting that in the absence of a purchase by A.O. Smith or Eemax both companies were prepared to enter into lucrative agreements with Skye for the purchase or licensing of Skye's products." (*Id.*). At a subsequent meeting on

November 30, 2009, Marek told Mihaylo that "A.O. Smith and Eemax had reviewed and approved Skye's products and that A.O. Smith or Eemax were going to buy Skye." (*Id.*). Marek also told Mihaylo that "a sale to or licensing agreements with A.O. Smith and/or Eemax were essentially a 'done deal' and that both companies were 'on the hook' but that in order to prepare Skye for sale and conclude the sale or license agreements Skye needed $2,000,000 in short-term working capital." (*Id.*). On December 16, 2009, Marek "assured" Mihaylo that "A.O. Smith or Eemax were prepared to purchase Skye for $50,000,000 and in the absence of a purchase A.O. Smith and/or Eemax were prepared to enter into lucrative licensing agreements with Skye." (*Id.*).

The SAC alleged the following. (*Id.* at 6). Summit Growth, acting through Mihaylo, entered into the DIP Finance Agreement with Skye based on Marek's statements. (*Id.*). Under the DIP Finance Agreement, Summit Growth agreed to provide Skye up to $2,000,000 in debtor-in-possession financing for short-term liquidity needs pending Skye's sale to or licensing agreements with A.O. Smith and/or Eemax. (*Id.*). The bankruptcy court approved the DIP Finance Agreement on December 23, 2009, and entered a final order in the Chapter 11 case on March 2, 2010. (*Id.*). Summit Growth has funded $1,588,910 under the DIP Finance Agreement as of the filing of the SAC. (*Id.*).

The SAC alleged the following. (*Id.* at 7). Marek "continued to make false statements about Skye's imminent sale to or licensing agreements with A.O. Smith and/or Eemax, and he continued to conceal the absence of any imminent sale or licensing agreement, Skye's true value and the amount that prospective buyers would pay to purchase Skye after the DIP Finance Agreement was signed, approved, and funded." (*Id.*). On February 3, 2011, Marek sent Mihaylo an email which stated that, on February 1, 2011, Marek had met with Mike Parker, Division Manager of A.O. Smith in Las Vegas and that Parker had stated that "A.O. Smith could either buy Skye or do a licensing agreement with Skye." (*Id.*). On February 6, 2011, Marek emailed Mihaylo and told Mihaylo that Eemax and A.O. Smith "both would like to make a deal" with Skye. (*Id.* at 7-8). After receiving the February 6th email, Summit Growth funded an additional $100,000 under the DIP Finance Agreement. (*Id.* at 8). On February 16,

3

2011, Mihaylo confirmed that Summit Growth had provided Skye with an additional $100,000 based on the "strength of a *pending* offer" by A.O. Smith. (*Id.*). On February 18, 2011, Marek emailed Mihaylo and stated that everything with A.O. Smith was "on track." (*Id.*). On February 28, 2011, Marek sent Mihaylo an email and represented that "there would be a deal between Skye and A.O. Smith or Eemax 'in the next few weeks.'" (*Id.*). These statements "were false when they were made, they were known by Marek to be false at the time they were made and the true facts were concealed" because on March 7, 2011, Marek emailed Mihaylo and told him that he was "still waiting for an offer from A.O. Smith" and that he was only at the stage of "meeting Kevin the President of Eemax." (*Id.*).

The SAC alleged the following. (*Id.*). Marek knew that his statements were false because on February 28, 2011, a person named Fred Huggins sent Marek an email which stated, "Hi Ted, . . . In our Saturday meeting, you spoke of the 'great idea' of my pursuing employment with A.O. Smith or Eemax, which could put me in a good position to encourage them to license products, or buy SKYE." (*Id.* at 8-9). "Skye was never sold to, and it never entered into licensing agreements with A.O. Smith, Eemax or any other tankless water heater company as Marek had repeatedly promised." (*Id.* at 9).

The SAC alleged five causes of action. (*Id.* at 9-14). In the first cause of action, Plaintiffs alleged fraud/fraudulent misrepresentation. (*Id.* at 9). Plaintiffs alleged that Summit Growth had entered into and funded the DIP Finance Agreement based on statements that Marek had made on or before December 16, 2009, regarding the sale of Skye to A.O. Smith or Eemax or the lucrative licensing agreements, that Skye was worth $50,000,000, and that A.O. Smith or Eemax would pay $50,000,000 to purchase Skye. (*Id.*). Plaintiffs alleged that Summit Growth would not have entered into and funded the DIP Finance Agreement had it known the truth of the statements. (*Id.* at 10). Plaintiffs alleged that Marek knew his statements were false when he made them because of his February 28, 2011, email which demonstrated that he concocted a plan after he had made those statements to have Huggins seek employment with A.O. Smith or Eemax to encourage either of them to buy Skye or license its products. (*Id.*). Plaintiffs alleged that Summit Growth reasonably and justifiably

4

relied on Marek's statements because "Mihaylo trusted Marek as a friend and as a business associate having served with Marek on Skye's board of directors briefly as Skye's Chairman of the Board until he resigned on or about September 14, 2009." (*Id.*).

In the second cause of action, Plaintiffs alleged fraudulent concealment/constructive fraud. (*Id.* at 11). Plaintiffs alleged that the DIP Finance Agreement made Summit Growth a secured creditor of an insolvent corporation to which Marek was an officer and director. (*Id.*). Marek owed Summit Growth a fiduciary duty that included a duty to disclose and to not conceal material information from Summit Growth. (*Id.*). After December 16, 2009, Marek continued to tell Mihaylo that the sale of Skye to A.O. Smith and/or Eemax was pending and imminent. (*Id.*).

In the third cause of action, Plaintiffs alleged breach of fiduciary duty. (*Id.* at 12). Plaintiffs alleged that Marek owed Summit Growth a fiduciary duty to act in the best interest of his creditors, to not conceal, and to provide Summit Growth with accurate and truthful information about Skye. (*Id.* at 13). After the DIP Finance Agreement had been signed, Marek never informed Summit Growth that there was no imminent sale, that Skye was not worth $50,000,000 or that A.O. Smith and/or Eemax would not pay $50,000,000 for Skye. (*Id.* at 13). Plaintiffs alleged that Marek had diverted or attempted to divert funds that Skye had received under the DIP Finance Agreement for his own personal use to pay third-party lenders for his personal loans. (*Id.*).

In the fourth cause of action, Plaintiffs alleged failure to disclose breach of fiduciary duty/constructive fraud. (*Id.* at 14). Plaintiffs alleged that Marek had a duty to disclose his breach of fiduciary duty to Summit Growth and that his failure to do so was constructive fraud. (*Id.*). In the fifth cause of action, Plaintiffs alleged negligent misrepresentation based on the statements that Marek had stated on or before December 16, 2009. (*Id.* at 14-15).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150

n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R.

Civ. P. 9(b). Under Rule 9(b), a plaintiff must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* A "plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*

## DISCUSSION

Marek files a motion to dismiss the SAC in its entirety. (Mot. to Dismiss (#37) at 1). Marek argues that Summit Green lacks standing to assert the claims because Plaintiffs do not allege that Summit Growth assigned any of its potential claims against Marek to Summit Green and they did not explain how a company formed in May 2011 has standing to bring claims against Marek for alleged misrepresentations that occurred prior to Summit Green's formation. (*Id.* at 12). Marek asserts that all of Summit Green's claims should be dismissed. (*Id.*). Marek argues that Plaintiffs fail to state a fraud based claim. (*Id.*). Marek asserts that the alleged representations are speculations about future events or opinions that cannot form the basis for an actionable fraud claim. (*Id.* at 15). Marek contends that the representation that Skye was valued at $50,000,000 is an opinion about the value of a business and that the statements that A.O. Smith and/or Eemax may pay $50,000,000 to purchase Skye or may license products are speculations about future events that third parties may or may not agree to. (*Id.* at 15-16). Marek argues that Plaintiffs have not pled with Rule 9(b) particularity that the statements were false. (*Id.* at 17). Marek asserts that the mere fact that an event did not come to be does not demonstrate that a representation was false at the time it was made. (*Id.*). Marek argues that Plaintiffs have failed to allege any facts showing that Marek knew the representations were false at the time he made them. (*Id.*). Marek also contends that statements made over a year after the alleged misrepresentations say nothing about whether he knew his statements in 2009 were false. (*Id.* at 18). Marek asserts that Plaintiffs' alleged reliance was neither reasonable nor justified. (*Id.* at 19). Marek argues that Plaintiffs have

7

failed to state a claim for constructive fraud/fraudulent concealment because the alleged misrepresentations took place before Plaintiffs entered into the DIP Finance Agreement, and thus, Plaintiffs were not creditors of Skye at the time of the misrepresentations. (*Id.* at 25). Marek contends that Plaintiffs fail to plead facts that state what he concealed from them. (*Id.* at 26). Marek argues that Plaintiffs fail to state a claim for negligent misrepresentation because the statements were vague, speculative, and puffery. (*Id.* at 28). Marek asserts that Plaintiffs' fiduciary based claims fail because there is no such duty between creditors and an officer/director and the claims are preempted by the Bankruptcy Code. (*Id.* at 29). Marek also argues that the bankruptcy court retained jurisdiction over Plaintiffs' claims. (*Id.*).

In response, Plaintiffs argue that Summit Green is a proper plaintiff in this action because it is an assignee of Summit Growth. (Opp'n to Mot. to Dismiss (#42) at 9-10). Plaintiffs argue that they have stated false representations because the alleged representations were definitive and certain and represented a current state of events set to conclude within a well-defined period of time. (*Id.* at 10-11). Plaintiffs argue that Summit Growth justifiably relied on Marek's statements because there were no red flags that triggered Mihaylo's need to further investigate. (*Id.* at 21). Plaintiffs assert that, in Nevada, an officer of an insolvent company owes a fiduciary duty to a company's creditors. (*Id.* at 22). Plaintiffs contend that they have pled concealment because the fraudulent misrepresentations can plausibly be construed as acts of active concealment. (*Id.* at 23-24). Plaintiffs argue that they state a valid claim for negligent misrepresentation because Marek's statements were factual and definitive. (*Id.* at 25). Plaintiffs assert that the bankruptcy law does not preempt their fiduciary duty claims. (*Id.* at 26). Plaintiffs also assert that the bankruptcy court's retention of post-confirmation jurisdiction in the closed Chapter 11 case does not extend to this case. (*Id.* at 28).

Marek filed a reply. (Reply to Mot. to Dismiss (#45)).

**I.    Standing for Summit Green**

The Court declines to decide whether one of the Plaintiffs lack standing at this time. The SAC states that "[e]xcept for funding obligations, pursuant to an *Assignment Agreement*

8

dated on or about May 20, 2011, [Summit Green] is the assignee of [Summit Growth] of that [DIP Finance Agreement] between [Summit Green] and non-party Skye International, Inc." (*See* SAC (#32) at 2-3). Based on this statement, it appears that Summit Growth only assigned part of the DIP Finance Agreement to Summit Green because Summit Growth retained funding obligations. As such, it appears that both Plaintiffs have an interest in the contract. The Court further notes that Article 11, Section 11.1(b) of the DIP Finance Agreement provides that "[a]ny warranty, representation, or other statement made or furnished to Lender by or on behalf of Borrower . . . proves to have been false or misleading in any material respect when made or furnished" is a default. (*See* DIP Finance Agreement (#37-1) at 23).

## II.   Bankruptcy Court Jurisdiction

The confirmed Chapter 11 plan of reorganization for Skye (the "Plan") stated that the bankruptcy court would retain jurisdiction under the following circumstances: (A) to determine the allowability and payment of any claims upon any objections by the debtor or any other party in interest entitled to proceed in that manner; (B) to determine any disputes which might arise regarding the interpretation of the Plan provisions; (C) to facilitate the consummation of the Plan; (D) to adjudicate any "core proceedings" under 28 U.S.C. § 157(b) which might be pertinent to the reorganization; and (E) to enter an appropriate final decree in the reorganization case. (Plan (#37-4) at 43).

The Court finds that the bankruptcy court does not have jurisdiction over this case. Plaintiffs are suing Marek as an individual for alleged misrepresentations he made on behalf of Skye and are seeking damages from Marek as an individual. As such, this case does not involve the Skye or the Plan.

## III.   First Claim: Fraud/Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation in Nevada, a plaintiff must establish the following elements: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act

9

or refrain from acting upon the misrepresentation; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting from such reliance. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).

In this case, Plaintiffs allege five misrepresentations in the SAC that occurred prior to entering into the DIP Finance Agreement:

- On November 15, 2009, Marek told Mihaylo that "Skye was worth $50,000,000 and that A.O. Smith or Eemax would pay that price to purchase Skye." (SAC (#32) at 5).

- On November 15, 2009, Marek told Mihaylo that "in the absence of a purchase by A.O. Smith or Eemax both companies were prepared to enter into lucrative agreements with Skye for the purchase or licensing of Skye's products." (*Id.*).

- On November 30, 2009, Marek told Mihaylo that "A.O. Smith and Eemax had reviewed and approved Skye's products and that A.O. Smith or Eemax were going to buy Skye." (*Id.*).

- On November 30, 2009, Marek told Mihaylo that "a sale to or licensing agreements with A.O. Smith and/or Eemax were essentially a 'done deal' and that both companies were 'on the hook' but that in order to prepare Skye for sale and conclude the sale or license agreements Skye needed $2,000,000 in short-term working capital." (*Id.*).

- On December 16, 2009, Marek "assured" Mihaylo that "A.O. Smith or Eemax were prepared to purchase Skye for $50,000,000 and in the absence of a purchase A.O. Smith and/or Eemax were prepared to enter into lucrative licensing agreements with Skye." (*Id.*).

The Court denies the motion to dismiss the first cause of action. The Court finds that, as pled, Marek's statements were representations and that Plaintiffs have pled sufficient facts to establish that Marek knew these representations were false at the time he made them.

## IV.   Second Claim: Fraudulent Concealment/Constructive Fraud

To succeed on a claim for fraudulent concealment in Nevada, a plaintiff must show that: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud plaintiff; (4) the plaintiff was unaware of the fact and would have acted differently had he known of the concealed fact; and (5) as a result of the concealment, the plaintiff sustained damages. *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995).

Generally, Nevada does not recognize an action for fraud based on nondisclosure

unless the plaintiff demonstrates that the defendant had a duty to disclose the fact at issue. *Dow Chem. Co. v. Mahlum*, 970 P.2d 98,110 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). A duty to disclose may arise when a fiduciary relationship exists between the parties or "where the parties enjoy a 'special relationship,' that is, where a party reasonably imparts special confidence in the defendant and the defendant would reasonably know of this confidence." *Id*. (citing *Mackintosh v. Jack Matthews & Co.*, 855 P.2d 549, 553 (Nev. 1993)). A duty to disclose may also arise in certain transactions where the defendant alone has knowledge of material facts that are not within the fair and reasonable reach of the plaintiff. *Id*.

Generally, "an arms-length lender-borrower relationship is not fiduciary in nature." *JPMorgan Chase Bank, N.A. v. KB Home*, 632 F.Supp.2d 1013, 1026 (D. Nev. 2009). However, under the insolvency exception, directors of an insolvent corporation owe a fiduciary duty to the company's creditors. *Id*. The Nevada Supreme Court has not determined whether this exception applies in Nevada. *Id*.

In *JPMorgan Chase*, Judge Pro, sitting in diversity jurisdiction, found that the Nevada Supreme Court had not determined whether the insolvency exception applied in Nevada. *Id*. However, after analyzing the rationale behind the exception[1], Judge Pro concluded that the Nevada Supreme Court would extend the insolvency exception to corporations and limited liability companies. *Id*. at 1026-27. This Court also finds that the Nevada Supreme Court would extend the insolvency exception to corporations and limited liability companies.

As such, the Court finds that Plaintiffs have stated a claim for fraudulent concealment because Plaintiffs sufficiently allege that Marek had made false representations, had a duty to disclose those material facts to Plaintiffs, and had actively concealed the truth from them. As such, the Court denies the motion to dismiss the second cause of action.

---

[1] The court found that the exception gave creditors of an insolvent company firm standing to assert that directors had breached their fiduciary duties by improperly harming the economic value of the firm to the detriment of the creditors. *JPMorgan Chase,* 632 F.Supp.2d at 1026.

11

### V. Third & Fourth Claims: Breach of Fiduciary Duty & Failure to Disclose Breach of Fiduciary Duty/Constructive Fraud

Here, Plaintiffs assert that directors of an insolvent company have fiduciary duties to its creditors under the so-called insolvency exception. (*See* Opp'n to Mot. to Dismiss (#42) at 22, 26). The Court finds that Plaintiffs state claims for breach of fiduciary duty and failure to disclose breach of fiduciary duty because this Court finds that the Nevada Supreme Court would apply the insolvency exception in Nevada. The Court denies the motion to dismiss the third and fourth causes of action.

### VI. Fifth Claim: Negligent Misrepresentation

To state a claim for negligent misrepresentation in Nevada, a plaintiff must allege: (1) a representation that is false; (2) that the representation was made in the course of the defendant's business or in any action which he has a pecuniary interest; (3) that the representation was for the guidance of others in their business transactions; (4) that the representation was justifiably relied upon; (5) such reliance resulted in pecuniary loss to the relying party; and (6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 460 F.Supp.2d 1246, 1262 (D. Nev. 2006). "The difference between fraud and negligent misrepresentation is that a negligent misrepresentation is made without a reasonable basis for believing its truthfulness." *Scaffidi v. United Nissan*, 425 F.Supp.2d 1159, 1170 (D. Nev. 2005).

The Court denies the motion to dismiss the claim for negligent misrepresentation because Plaintiffs have sufficiently pled false representations.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant Thaddeus "Ted" Marek's Motion to Dismiss Second Amended Complaint (#37) is DENIED.

DATED: This 22nd day of May, 2013.

_____
United States District Judge